May the clerk call the first case 3 23 0 1 1 3 the people of the state of Illinois Appleby by Nicholas Atwood versus Dominic Travis appellant by Mark Fisher Good morning counsel. Good morning your honors may it please the court counsel. I'm Mark Fisher from the third district appellate defender's office. I represent the defendant in this case Dominique Travis. Dominique was convicted in a bench trial of armed habitual criminal and two counts of unlawful possession of a felon of a weapon by a felon. He was sentenced to three concurrent terms of eight years imprisonment. Four issues are raised on appeal. In the first issue he maintains he was not proven guilty of the charge defenses beyond a reasonable doubt and he therefore asked this court today to reverse all of his convictions outright. Alternatively he seeks the same relief based on constitutional challenges argued in issues two and three. The criminal statutes under which he was prosecuted and convicted are unconstitutional on their face and or as applied to him. Specifically they violate the second amendment to the United States Constitution and or the equivalent provision in the Illinois Constitution. As a final alternative issue for this court at the very least should reverse outright the convictions of unlawful possession of a weapon by a felon because those offenses are lesser included offenses of armed habitual criminal and the state concedes the fourth issue on appeal. In argument today I'd like to address the first three issues but I'd like to take them in reverse beginning with the constitutional challenges issues two and three and then proceeding to talk about the reasonable doubt issue issue four. Now the second amendment of course says that the right of the people to keep and bear arms shall not be infringed. In 2008 in the Heller case United States Supreme Court interpreted the second amendment to guarantee rights to individual citizens to possess firearms and more recently in 2022 in Bruin the court reaffirmed that holding. Now between the time that Heller and Bruin were decided courts devised and applied a two-step analysis in deciding whether a gun statute violates the second amendment. The first step simply asked whether the conduct that is alleged falls under the plain language of the second amendment. If it does courts would then proceed to the second step of the analysis which was means and scrutiny weighing the legislative purpose in enacting the statute against the burden or the punishment imposed on the defendant. Now in Bruin the court changed the analysis it retained the first step asking is the alternatively the Illinois constitution although I'm talking primarily today about the second amendment but for the second step the Bruin court did away with means and scrutiny substituted a historical analysis and specifically that analysis asked courts to determine whether in the late 1790s when the second amendment was ratified was were similar gun limitation statutes in effect in this country. Now the court said that a reviewing court or a trial court doesn't necessarily have to find that the same exact statute existed back then. It doesn't have to find a historical twin but rather a historical analog. Historical analog being a similar statute comparably justified and imposing comparable burden. In addition very importantly the Bruin court said that if the court gets to the second step of the analysis the burdens on the state to establish the existence of historical analog. Dominique argues today that both steps in this analysis favor him. The parties however disagree as to the outcome of both of those steps and so I'll address those in order. The first step should be fairly straightforward is the conduct covered by the second amendment. The conduct in this case was possession of a firearm and that was for all three charges. No indication that he did anything with the firearm, threatened anybody, harmed anyone with the firearm, possession of a firearm and Heller and Bruin tell us that is conduct covered by the easily and quickly move on to the second step of the analysis which is the historical analysis. Now there is no question that in the late 1790s in this country there were numerous statutes limiting gun possession but those statutes did so as to shall we say disfavored segments of the population such as African Americans, Native Americans, Catholics, individuals who refused to swear loyalty oaths. There were no laws on the books at that time that precluded convicted felons solely on the basis of having prior convictions. Counsel did they even have that distinction at the time convicted felons as opposed to the there were no statutes even distinguishing between those two. The reason why Dominique makes an alternative as applied argument here is yes he has prior felonies but not prior violent felonies and the charged offenses here are possession offenses not violent offenses. And that's really your argument isn't it the difference between it being a violent felony versus a nonviolent felony. Well Dominique submits that there were no laws on the books in the late 1790s barring either violent or nonviolent offenders from possessing weapons and certainly no laws permanently barring convicted felons from possessing weapons and of course these two statutes that we're involved with in this case both impose permanent lifetime bans. Counsel you're saying that can you say that you agree that you can characterize Illinois's felony gun laws felon gun laws as permanent. Would you say they are considered permanent when there is a method under the FOID to apply. Under the laws in the state of Illinois once an My understanding is that an individual cannot apply down the road. Petition for a restoration. I do not believe so. I do not believe so. And again the plain language about the armed habitual criminal and UW by a felon it's a lifetime ban and that's how those statutes have been applied and have been interpreted. Now there have been several cases discussing these issues since the Bruin case was decided. Several of them were set forth in the briefs filed by the parties. In particular I would point your honors to a decision from a federal district judge in northern district of Illinois United States versus Prince. I think he goes through rather exhaustive and even handed analysis historical analysis. It's also I find it interesting in that case he talks about the plague in this country of gun violence. It's apparent he's not looking to grant relief even since he's forced to dismiss order dismissal of the federal similar federal gun charges against the defendant in that case. But I think he goes through a very strong historical analysis. So for all of these reasons Dominique submits that both steps of the analysis favor him and that is why he respectfully asks this court to reverse all three of his convictions outright. Now as argued in issue one there is a separate basis for that same argument and of course if your honors reach issue one and grant relief on issue one you don't necessarily have to address the constitutional challenges. The simple basis for the straight reasonable doubt is that the state failed to carry its burden of proving beyond a reasonable doubt that on the day in question Dominique possessed a firearm. The only evidence of possession introduced at the bench trial was comprised of a couple of cell phone videos that showed Dominique riding in an automobile holding an object that looked like a firearm and Dominique submits that should not be enough to prove guilt beyond a reasonable doubt of these charges for two reasons. First the Illinois criminal code contains a very specific definition of firearm an object designed to expect expel projectiles or fire bullets by the explosion explosion or expansion of gas. Secondly there are some companies in existence these days that are very adept at producing marketing and selling replica firearms that look exactly like the real thing but that fire bullets don't fit the Illinois definition of firearm and I've appended to the reply brief this was not introduced at trial but I did append to the reply brief a website page from one of these companies and it's very clear on that page these objects do not fire bullets they're only replicas. Now I can't tell your honors that what Dominique is holding in that video is a replica or it's not a replica but under these circumstances the state should be required to prove that it's not a replica otherwise it's reducing the state's burden of proof and really shifting the burden over to the defendant. I would also submit to your honors that if your honors do uphold the convictions in this case and reject the reasonable doubt argument that would allow police prosecutors if they so chose to comb through individuals social media sites whether Snapchat, TikTok, Facebook, whatever the case may be. I'm not on any of those sites but I understand that sometimes that many people post photographs and every now and then they post a photograph holding an object appears to be a gun. If Dominique can be convicted based on this video those people presumably could be convicted just simply based on a photograph something more should be required to sustain the state's burden of proof beyond a reasonable doubt. Counsel what's your understanding of how that evidence was presented? I've been through the videos I've been through the stills but as far as the timeline how it was actually presented in court do you have knowledge of that other than reading the transcript and comparing the two? Yes so and correct me if I'm if I'm misunderstanding but there's testimony from a police officer. He actually conducted a parole check on another person an associate possibly a relative of the defendant's but a third person in the course of that parole check looked through that third person's cell phone saw a couple of videotapes. I'm sorry I was focused on the actual identification as. Oh I'm sorry a trial so the police officer testified in his experience it looked like a gun. That was pretty much the extent of the evidence Judge Rippey the trial judge viewed the videotape during trial. Interestingly the police officer referred to the model of what the model of the weapon that he thought this looked like. Interestingly Judge Rippey said you know I used to I used to own a gun that particular model and looking at this that looks to me that looks to me like like like it's the real thing. They both referred to some replica firearms. You see some markings on there too. They're trying to make it look as realistic as possible. So that was the extent of the evidence. The videotapes were recorded about I think about three months before the officer had a chance to view them. Were there objections made to the officer's testimony and the identification? No there were no objections. Trial counsel did argue this was not enough to carry the state's because all the state was able to prove or to show was that the defendant at one point in time possessed an object that looked like a gun and that shouldn't be enough. So he argued that in in closing no no objection otherwise. So for all of these alternative reasons either because of the constitutional challenges or because the state did not prove its case beyond a reasonable doubt Dominique respectfully asks your honors to reverse his convictions outright. And again as set forth in the brief and the state concedes in the alternative at least two of those have to be vacated. Thank you counsel. Unless there are other questions from your office. Any questions? I do not. Thank you. Counsel if you're ready. May it please the court. Good morning your honors. Counsel my name is Nicholas Atwood and I represent the people of the state of Illinois. This is a case to determine whether or not the possession of firearms by violent felons. This court should find that the Illinois firearm regulatory scheme is constitutional both as applied and facially to this defendant because the defendant is not part of the people with whom the Second Amendment of the United States Constitution protects and because this this unlawful possession of a weapon by a felon and armed habitual criminal statutes are consistent with this nation's historical regulation on firearms. The crux of defendant's argument is it is he is asking this court to extend the recent holding in New York Rifle Association v Brewer to cover his conduct. Bruin. Correct. To cover his conduct which was unlawfully possessing a firearm as a convicted felon. Now in Bruin the U.S. Supreme Court signaled that the Second Amendment covers the acts of lawful law-abiding responsible citizens. It says this in the very first line of the opinion. The petitioners in Bruin were both law-abiding citizens. The law at issue in that in that case was a New York firearm regulation that required proper cause or a special need for an individual to carry a firearm outside of the home. Both the petitioner petitioners were lawful citizens and they had petitioned to carry outside of the home one of the petitioners on the basis that there had been a spate of robberies in his neighborhood and he wanted to carry it for protection. Now in that case a single licensing official within the state of Illinois or in the state of New York had discretion to deny that application and he did so. The New York regulation essentially required a specific articulable threat to a person in order to show that special need. Now the Bruin court first announced this two-part test. They modified the test that existed in Heller as counsel said they did away with the second step which was the means end scrutiny and they replaced that with a step one. Is this conduct covered under the plain text of the second amendment and if so step two whether or not the regulation in question has a historical analog that is consistent with our nation's regulation of firearms. Now the people submit with regard to the second amendment the second amendment plain text covers the people's right to bear arms both in their home and publicly as according to our U.S. Supreme Court precedent. The defendant is not part of the people who are contemplated in this amendment and we look at the historical intent of the second amendment what were the ratifiers talking about when the second amendment was being passed. If we look at the debates from the ratification conferences that were held in the second amendment both Pennsylvania and Massachusetts both put forward language that would limit the possession of a weapon to non-criminals and as Sam Adams from the Massachusetts delegation stated peaceable citizens. From the very beginning the delegates were determining whether or not it was a good idea to put firearms in the hands of violent felons and in a case cited by defendant Prince v. United States it comes out of our northern district of Illinois they discussed this ratification conference and they cited legal historian Stephen Hobrock and Stephen Hobrock said that although this language never made its way into the second amendment it was understood by the delegates based on their debates that it would not cover violent individuals like the defendant in this case and on that issue defendant contends that he's not a violent felon and yet the record is very clear he has felony convictions for aggravated battery battery of a pregnant person aggravated battery of a police officer and attempted aggravated battery in addition to numerous other felony convictions so while not history of committing violent felonies and so under that first step of the test does the plain text cover a violent offender not a single court interpreting Bruin in more than 1500 decisions to date has said that it does cover a violent felony offender and moreover that we should use the PSI as evidence of of the violent nature of the felonies well to the extent that we can as I mentioned in the brief your honor it doesn't tell us what these specific facts are we don't know if firearm maybe he pistol whipped one of his victims we don't know because the as applied challenge wasn't fleshed out and we can't speculate we can only look at what the PSI said and the PSI is what you want us to consider the PSI is what I want us to consider in the context of he's been convicted of violent felonies as far as the circumstances it would be pure speculation because the defendant did not have a hearing on this matter in the trial court raising this as applied challenge that's part of the reason why the people believe he forfeited that challenge I'm just because of the context PSI means pre-sentence investigation report yes thank you and so the record that we do have indicates that he has violent felony convictions and in addition when we look at this law abiding citizen language Bruin mentions it 38 times in the majority and in the concurrent opinions the court is bending over backwards to signal that we do not want to put firearms in the hands of dangerous individuals and this goes back to DC v Keller city of Chicago or v McDonald all of these cases refer to this law abiding citizen and in Justice Kavanaugh's concurrence he discusses the fact that nothing in our opinion is disturbing the right of a state to regulate firearms in the possession of felons and the reason it does so is because Illinois is a shall issue state which differs from New York which was a may issue state in Illinois there are objective metrics in place for you to apply for a firearm and if those objective metrics are met such as criminal history mental health issues substance abuse issues if those are met the state has no discretion to deny a license and the court reiterated we're doing nothing to disturb those prior rulings now in his brief defendant contends that this is mere dicta some cases say it's not dicta some cases say it is but importantly our supreme court has told us in the case of judicial dicta if we have significant evidence in a case from a superior court such as the U.S. Supreme Court on a particular issue we can consider that as authority and what more authority do we need than six of nine justices in the U.S. Supreme Court making the same statement repeatedly throughout this opinion it's more than a simple majority agree with that concept so on that basis the people would contend that defendant never meets the first step of the Bruin test and there's no need to move to the second. Counsel do you believe we need to determine the constitutionality of gun bans for non-violent felons? I don't believe we need to determine that here because we don't have the facts to do that there are a number of cases pending nationwide that deal with non-violent felons and there are some cases within Illinois that deal with non-violent felons. I think if we're going to try to predict the future the U.S. Supreme Court under its current makeup is probably going to make some kind of a distinction between non-violent felons and violent felons but on the record that we have today there's no need to make that determination because it's not supported by the facts that are in front of us there's no basis to distinguish between the two because the situation we have is an as applied challenge with a violent felon if you find that as applied to him this law is a constitutional then it's also facially constitutional so there's no need to address that additional question to the extent your honors may want to consider that I would ask for supplemental briefing on that particular issue but moving to the second step is the Illinois unlawful possession of a weapon by a felon and armed habitual criminal statutes do they have a historical tradition of firearm regulation is there a historical analog to these rules and as defendant notes it doesn't have to be a dead ringer or a historical twin it's enough if there is a simple analogy that can be made how could it be how could it be is that your question I mean it was there was muskets well your honor points out part of the part of the issue that many courts are taking with this Bruin ruling is that you know it's it's sort of had a conclusion that it justified after the fact depending on your position on firearm regulation there isn't going to be a historical twin as your honor noted but there are analogs and there are multiple analogs one of them the defendant noted is the rather odious and detestable bans on the possession of firearms by whole classes of people that is native americans enslaved persons and catholics in the eastern seaboard now obviously these are odious these are dinosaurs from our jurisprudence from a bygone era that would no longer pass constitutional muster but unfortunately under the test as articulated in Bruin we must consider them they are now requisite considerations because they're historical analogs and so defendant what weight would we give those the courts are varying on that it other factors that would be present i would say there is significant weight to the concept of class of banning particular classes and in this case just the ability to make the determination that there is a specific class at that time that should not be permitted correct in an analogous to today the class would be classes of felons violent or non-violent or both it's up to the court to make that determination so while it's not a dead ringer it's not a similar because it deals with class-based denial of firearm possession in addition there were other common law crimes and crimes on the books we mention a fray but importantly we also mention the surety statutes that existed at the end of the 18th century in a surety statute an individual with reasonable cause could request that a person be disarmed when they came into town i sort of imagine a situation where an individual sees some kind of a troublemaker or someone who's known to fire off their weapons in public places comes into town and says look this person has either threatened me or i feel threatened they've done something in the past that may be justified disarming them temporarily either through a specific threat or they engaged in violence at some prior point the state can disarm that person in exchange for a surety bond and again it's not an exact historical twin but the point is if you have done something to cause a belief that you are reasonably dangerous to the people and the citizenry around you you can have your firearms taken away the analogy is violent felons of today have already committed acts which would justify a court in finding a reasonable cause to disarm them in order to prevent future violence and this goes right in to the second argument regarding the illinois constitution now defendant argued that the illinois constitution provided greater protections because instead of using the language the people like the second amendment does the illinois constitution refers to the definition of citizen it means a member of a political community it's much narrower than a definition of the people which the people could mean anyone and everyone within the bounds of a jurisdiction you know the fourth amendment doesn't discriminate against european travelers in new york city they still enjoy the same fourth amendment right even though they're not citizens of our political community the illinois constitution refers to citizens and notably during the constitutional convention in the 1970s delegate foster referred specifically to law-abiding persons because the delegates were very wary of even providing article 1 section 22 they didn't want to memorialize in the constitution an amendment to allow people to handle firearms or to have a right to bear firearms because they were worried about the potential violence and consequences so in delegate foster's statement he referred to what we're doing here is giving law-abiding citizens a right to be able to defend themselves in their home to engage in hunting and to violent felons and the delegates went on and had these discussions they were very preoccupied with criminal behavior and potential violence to the citizens and so in because of that they came up with the limiting clause in the illinois article 1 section 22 which was the subject to the police power language that language is not present in the second amendment and what that language does is defer to the state give it the authority to regulate all manner in the way firearms may be possessed or used by the people within this state and in doing so it doesn't run afoul of preemption as defendant mentions in his reply brief it doesn't go further than the united states constitution it goes as far as what district of columbia v heller and city of mcdonald and what bruin state that all states maintain the authority to regulate firearms within their own jurisdictions as long as they are based on objective metrics and on historical analogs which are unlawful possession of a weapon by a felon and armed habitual criminal statutes do and so with that the people would ask to find that defendant's constitutional constitutional complaint fails both as applied and facially under the illinois constitution and the constitution of the united states and briefly i'd like to address defendant's reasonable doubt so defendant contends that there wasn't much evidence supporting that he had possessed this firearm and so as as defendant mentioned there was a parole violation a parole inspection was conducted the firearms were located as was a cell phone and what the record indicates was defendant's cousin's home on that cell phone they found videos and images of the defendant and his cousin handling firearms the detective gardner who was investigating stated that he recognized the i believe it was the cousin's phone that's my recollection and so the defendant was ultimately charged at the bench trial evidence was presented involving video the video as well as still shots and the markings that were compared were compared to the firearms that were retrieved from the cousin's residence the pt 111 and i believe the xt9 and detective gardner testified well these are the markings on the ejector port that are similar to the markings on this firearm this marking is similar to a serial number that is similar here we just didn't have actual serial visible because they were slightly blurry but there was no question in the videos that this was not a blurry image it was a firearm in these people's hand and so defendant is has added to the appendix a google search that he conducted of this particular firearm clearly i would ask this court to strike that that wasn't considered by the trial court and if this court were to try to consider that as a replica it would be going beyond the evidence was presented essentially retrying the defendant which our case law indicates this court's not allowed to do we have to review what the trial court reviewed and so in its ruling the trial court looked at all this evidence he had the prosecutor point the firearm at the at the wall so he could see the barrel and so that indicated that he was looking to see is this a bb gun is this a toy gun that maybe has a capped end and neither of those things were present then he stated that he had owned the same firearm previously and that he would be quote shocked if this wasn't a real firearm and so the case law is clear defendant is advocating for this court to move the move the goal posts for the state to make us prove beyond all doubt your honor i see that i'm out of time i briefly conclude finish to prove beyond all doubt that this was a firearm the state is not required to do so the state must prove beyond a reasonable doubt and the case law is clear there are numerous cases cited in the briefs with far less evidence supporting it by untrained professionals not like the detective or the judge by just simply seeing the handle of a firearm tucked into a belt courts all found that to be sufficient to prove beyond a defendant's convictions and sentence and to find that the uh upwf and armed habitual criminal statutes are both constitutional facially and as applied thank you thank you counsel a couple questions um as it relates to the replica you haven't filed any written motions uh regarding the attachment have you yes we did file some written motions adding authority and most of that involved illinois cases since the briefs i'm sorry not to the substance of it generally just to the attachment of the picture of the replica that was found no i have not filed a written motion to but you're asking us to not consider it correct and then finally the uh one act one crime argument are you conceding it or not we conceded that in our brief yes your honor any other questions thank you thank you counsel rebuttal thank you your honor just very briefly with respect to the reasonable doubt and counsel mentions that when the officer conducted the parole check on the third person found a couple of weapons uh and he said they were similar models to what he thought he saw on the videotape but he specifically said i can't say those are what the defendant and this other person are holding in the videotape there's no evidence of fingerprints dna etc in addition uh judge rippy when he ultimately found dominique guilty he said i'm not relying on that other evidence because there's no showing of a connection the other thing i'd say with respect um to the uh to the reasonable doubt i would analogize to drug cases say you have a situation where an individual's charged with unlawful possession of heroin cocaine another controlled substance we all know that in those cases generally what the state has to do is introduce testimony from a lab expert that he or she has been trained in the science and is determined that this object is in fact cocaine heroin whatever it's alleged to be defendant is simply arguing that similar proof should be required here it's not beyond all doubt but beyond reasonable doubt requires more than showing an object that looks like a gun moving on to the constitutional challenges uh justice davenport asked counsel a question regarding these other statutes that we know were in existence during the founding era the odious statutes as counsel referred to them the only reason the state is forced to rely on those statutes and admittedly some of the cases deciding bruin issues have looked to those statutes is because statutes barring felons from possessing weapons based on felon status did not exist back then and so they go to these other statutes precluding certain again disfavored if you will segments of the population from possessing weapons certainly legislatures back then could have precluded felons from possessing weapons specifically in statutes they failed to do so council references some of the proposals made in massachusetts and pennsylvania during the constitutional convention conventions but those were proposals they did not win the day uh there could be there could have been qualifying language in the second amendment it is not there i would also note that in the prince decision i mentioned previously judge there noted that on a federal basis a federal statute precluding felons from possessing weapons didn't come into effect until the 1930s federal statutes permanently banning felons from possessing weapons didn't come into effect until the 1960s the illinois experience first statute precluding a convicted felon from possessing a weapon 1967 this is all in the briefs but 1967 and it wasn't a permanent ban it was a five-year ban first statute illinois permanently banning felons from possessing weapons the unlawful possession of a weapon statute by a felon 1984 and then we have armed habitual criminal in 2005 and so all of these illinois statutes and federal statutes coming into effect long after ratification of the second amendment and in bruin supreme court tells us we have to look at the law that existed when the second amendment was ratified but the federal statutes have been upheld correct i'm sorry the federal statutes have been upheld yes benny right now uh there's a lot of talk about the people what does the people mean council brings that up it's some of the other cases as well it's true there are a lot of references to law-abiding citizens in in the bruin case i would submit to your honors the court was referring to the individuals involved in that litigation they were dealing with what was brought before them but at the same time both in bruin and in heller the court said that the people means the entire populace with no unspecified subsets in heller the court said the people means all americans and that was quoted favorably in the bruin decision uh the state again as it did in the briefs argues that dominique was a violent felon again the offenses here were possessory and the prior offenses that were alleged were also possessory just very quickly the psi does show two counts of aggravated battery one on a public way one because the uh the victim or complainant was handicapped uh or pregnant as this court well knows that doesn't mean that violence was necessarily involved it could have been a push because it was a public way because of the status of the person the state could have fleshed this out at sentencing it didn't judge rippy imposed eight years sentences and for armed habitual criminal that's only two years over the minimum because it's class x he could have gone much higher had he thought dominique was violent thank you for all of these reasons uh dominique thanks your honors for your time today and requests outright reverse of all convictions thank you thank you no questions i have no questions thank you thank you normally we would adjourn right now